Eugene Morris HARTIS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–04–00441–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 13, 2005.

Charley L. Smith, Bellville, for appellants.

Daniel W. Leedy, Bellville, for appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

We withdraw our opinion of August 30, 2005, and issue this substitute opinion.

A jury convicted appellant Eugene Morris Hartis, Jr. of resisting arrest or transportation, and the trial court sentenced him to 180 days in jail and a $4,000 fine.[1] In four issues, appellant challenges (1) the legal and factual sufficiency of the evidence supporting his conviction; (2) the trial court's denial of his motion for election; and (3) the trial court's admission of portions of a videotape evidencing his arrest. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The events at issue began with a traffic stop by Officer William Palmer of the Sealy Police Department on November 21, 2002 after he observed appellant exceeding the posted speed limit. Appellant insisted that he was not speeding and refused to sign the citation. After Palmer informed appellant that he would be arrested if he did not sign, appellant replied, "Well, then, you do it." Appellant submitted to being handcuffed, but struggled with Palmer as they walked to the patrol car. The entire encounter was recorded on videotape by a camera inside Palmer's patrol car. Appellant was taken to the Austin County Jail and was subsequently charged by information with "prevent[ing] or obstruct[ing]" Palmer "from effecting an arrest, a search, or transportation," a violation of TEX. PEN. CODE ANN. § 38.03 (Vernon 2002).

Appellant made a motion for election, stating that there are three ways in which one can commit an offense violating Section 38.03, and asking the trial court to order the State to identify which of these ways it would attempt to prove. But, at the hearing on the motion, appellant took a different position, and argued that this section actually constitutes three different offenses, rather than three ways to commit a single offense; therefore, the basis of appellant's motion is unclear. Appellant also filed a motion in limine, seeking to exclude a portion of the State's videotaped evidence. The trial court denied both motions. At the conclusion of the trial, the court issued a jury charge that asked jurors to determine whether appellant was guilty of resisting arrest and also whether

---

1. Appellant's sentence was suspended and he was placed on community supervision for 180 days.

he was guilty of resisting transportation.[2] The jury unanimously found him guilty of each individual charge.

## II. Issues Presented

In four issues before us, appellant challenges (1) the legal and factual sufficiency of the evidence supporting a conviction for resisting arrest; (2) the legal and factual sufficiency of the evidence supporting a conviction for resisting transportation; (3) the trial court's ruling on his motion for election; and (4) the trial court's ruling on his motion in limine. For the sake of clarity, we address these issues chronologically, reflecting the order in which they arose in the court below. We therefore turn first to appellant's third issue.

## III. Discussion

### A. Did the trial court err by denying appellant's motion to require the State to elect a theory of prosecution under Section 38.03?

In appellant's brief, he argues the trial court erred in denying his motion to require election because "[section 38.03] provided three ways to commit the offense and the state should be required to specify the manner in which the [appellant] violated the statute." By denying his motion, appellant argues his ability to prepare a defense was impacted because he "could have made different motions, pretrial motions, presented different evidence and different motions for directed verdict." He also argues the trial court's ruling "clearly confused the jury." Because we conclude that section 38.03 states only one offense, and that appellant was on notice of the

offense alleged in the information, we overrule appellant's third issue.

The State is not required to elect between separate manners and means of committing the same offense. *Rodriguez v. State*, 970 S.W.2d 66, 69 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) ("[t]he State may plead all three forms of delivery [of cocaine] and it may not be forced to elect a particular method on which to prosecute"); *Braughton v. State*, 749 S.W.2d 528, 530 (Tex.App.-Corpus Christi 1988, pet. ref'd) ("[t]he State need not elect between various theories alleged and the jury may consider all theories and return a general verdict of guilty") (citing *Cook v. State*, 741 S.W.2d 928, 935 (Tex. Crim.App.1987) (en banc) and *Franklin v. State*, 606 S.W.2d 818, 821 (Tex.Crim.App. 1979) (en banc)). Although a defendant may be charged multiple times for committing the same offense in different ways,[3] where only a single offense is charged, and when that offense can be committed in more than one way, a defendant is entitled to be informed of the manner in which he allegedly violated the statute. *See Ferguson v. State*, 622 S.W.2d 846, 850 (Tex. Crim.App. [Panel Op.] 1981).

In addressing this issue, we must first decide whether section 38.03 addresses more than one offense. If it does, then appellant was entitled to force the State to elect which offense it would attempt to prove. But, if the statute instead addresses various ways to commit a single offense, we must determine whether the State informed appellant of the type of violation it would attempt to prove.

---

2. The State abandoned the allegation that appellant resisted a search.

3. *See Carlock v. State*, 8 S.W.3d 717, 721 (Tex.App.-Waco 1999, pet. ref'd) (stating, "It has long been held that where there are sever-

al ways or means by which an offense may be committed set forth in the same statute, and those ways or means are subject to the same punishment, they may be charged conjunctively in one paragraph").

### 1. Section 38.03 addresses only one offense

■ Section 38.03 of the Texas Penal Code states:

> Resisting Arrest, Search, or Transportation
>
> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

TEX. PEN.CODE ANN. § 38.03 (Vernon 2002). Appellant argues arrest, search, and transportation constitute three separate offenses, whereas the State argues these words describe three different ways of committing a single offense. Although we approached the issue in dicta in *Vaughn v. State*, 983 S.W.2d 860 (Tex.App.-Houston [14th Dist.] 1998, no pet.), this is the first time that this court has been asked to address this issue directly.

In *Vaughn,* the defendant pleaded not guilty to the offense of resisting arrest under section 38.03. On appeal, he challenged both the legal and factual sufficiency of the evidence to support his conviction of the offense as charged in the information. *Id.* at 861–62. Vaughn's information stated:

> Defendant, on or about January 30, 1997, did then and there unlawfully intentionally PREVENTS [sic] a person he knows is A PEACE OFFICER from effecting AN ARREST of LARRY MICHAEL VAUGHN buy using force against S.D. THOMPSON, namely by STRIKING S.D. Thompson WITH HIS HANDS.

*Id.* To convict Vaughn under this information, the State was required to prove beyond a reasonable doubt the elements of the offense with which he was charged. *See id.* at 862. Those elements were (1) that the appellant intentionally; (2) prevented or obstructed; (3) a person he knows is a peace officer; (4) from effecting an arrest; (5) of himself; and (6) by using force against the peace officer. *Id.* At trial, Officer Thompson testified that Vaughn "wasn't under arrest, but he was resisting just me detaining him. . . ." *Id.* at 863. He further testified that Vaughn's action in flailing his arms did not constitute force directed against him, but was to avoid being handcuffed. *Id.* We concluded that the evidence was legally insufficient to support appellant's conviction because no evidence established defendant was ever under arrest. *Id.*

Though not necessary to the holding of the case, this court also stated:

> Three different offenses are covered in section 38.03—resisting arrest, resisting search or resisting transportation. . . . The State could have charged appellant alternatively with all three offenses which would have forced appellant to file a motion to quash the information and require the State to charge him more specifically. *See Ferguson v. State,* 622 S.W.2d 846, 850 (Tex.Crim.App.1981). Rather, the State charged appellant specifically with resisting arrest, thus relieving appellant from defending against the other two offenses.

*Id.* at 862. As support for the conclusion that resisting arrest, resisting search, and resisting transportation constitute three separate offenses, this court merely restated the statute and cited to *Ferguson.* *Id.* at n. 1. A closer reading of *Ferguson,* however, reveals that *Ferguson* did not address a situation in which more than one offense was or could have been alleged. To the contrary, *Ferguson* explained that there can be more than one type of act or

omission by which a defendant could commit the same offense.[4]

In *Ferguson*, the defendant was charged with delivery of a controlled substance, and the Court noted that the statute allowed "three different and distinct ways of *establishing the accused's criminal conduct.*" *Ferguson*, 622 S.W.2d at 850 (emphasis added). The Court of Criminal Appeals found that the type of delivery the State would attempt to prove would be critical to the appellant's defense, because the " 'delivery' is the act by the appellant which constitutes the criminal conduct." *Id.* Accordingly, the Court held that when there is more than one distinct manner by which the defendant could have committed an offense, the State must put the defendant on notice of the manner it intends to prove. *Id.* 622 S.W.2d at 851.

*Ferguson* was applicable to the facts in *Vaughn*, and would have dictated the same result that *Vaughn* reached. By stating in the information that Vaughn resisted arrest, the State provided notice to Vaughn that it intended to prove he committed an offense in that manner. But by stating *only* that Vaughn resisted arrest, the State was limited to proving he violated section 38.03 in that manner only. As a result, Vaughn could not lawfully have been convicted by proof that showed only that he resisted search or transportation.

Because *Vaughn's* references to section 38.03's "three offenses" are mere dicta, no court has followed that language, nor do we feel bound to do so. *See Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (noting, "Dictum is not binding as precedent under stare decisis"). In *Vaughn*, we did not conduct a "separate offense" analysis, nor did we refer to any of the cases acknowledging that a single offense can be committed in different ways. *See, e.g., Gibbons v. State*, 652 S.W.2d 413, 415 (Tex. Crim.App. [Panel Op.] 1983) (holding when the penal statute provides multiple ways an offense may be committed, the charging instrument must allege every alternative means of commission upon which a conviction will be sought); *Renfro v. State*, 827 S.W.2d 532 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (allowing each method of committing the same offense to be submitted alternatively in the charge to jury); *Finster v. State*, 152 S.W.3d 215 (Tex.App.-Dallas 2004, no pet.) (conducting a "separate offense" analysis on section 38.03 and concluding that it addresses one offense that can be committed in a variety of ways). Although such analysis was unnecessary to the holding in *Vaughn*, it is required in the present case.

■■ Where a statute proscribes different types of conduct, the use of the word "or" between the descriptions of that conduct is some indication that the legislature intended each to be a separate offense. *Vick v. State*, 991 S.W.2d 830, 832–33 (Tex.Crim.App.1999). Such use is not dispositive, however.[5] In order to deter-

4. *See Queen v. State*, 662 S.W.2d 338, 340 (Tex.Crim.App.1983) (en banc) (noting, "We observe then that the *Ferguson* opinion stands for the proposition that an indictment for the delivery of a controlled substance must specify which type or types of delivery the State would rely upon and need not allege the precise manner by which a specified type of delivery was performed") (emphasis in original).

5. If the mere use of the word "or" indicated a different offense, section 38.03(a) would not constitute three offenses, but forty-eight offenses, addressing every combination of "prevents *or* obstructs" (two possibilities) "a person he knows is a peace officer *or* a person acting in a peace officer's presence and at his direction" (two possibilities) from effecting "an arrest, search, *or* transportation" (three possibilities) "of the actor *or* another" (two possibilities) by using force "against the peace

mine the number of offenses addressed by the statute, we examine the language of the statute to identify the conduct that constitutes a violation, and the object of the prohibited conduct for whose benefit the statute was likely enacted.

In section 38.03, the conduct proscribed is not "effecting an arrest, search, or transportation;" it is "intentionally prevent[ing] or obstruct[ing] . . . by using force." We must therefore determine if "preventing" and "obstructing" are different types of conduct. The definitions of the word "obstruct" include "to hinder or prevent from progress, check, stop, . . . to impede; to interpose impediments to the hindrance or frustration of some act or service, as to obstruct an officer in the execution of his duty." BLACK'S LAW DICTIONARY 1077 (6th ed.1990). "Prevent" is similarly defined as "to hinder, frustrate, prohibit, impede, or preclude; to obstruct . . . [t]o stop or intercept the approach, access, or performance of a thing." BLACK'S LAW DICTIONARY 1188 (6th ed.1990). Both words can be used to mean "hinder," "prevent," "stop," or "impede." Based on the definitions and common usage of these words, we cannot conclude that they describe different types of conduct.

The object of the conduct is also relevant to the determination of the number of offenses a statute proscribes. A defendant violates section 38.03 by intentionally preventing or obstructing a peace officer or a person acting at a peace officer's direction "from effecting an arrest, search or transportation . . . by using force. . . ." In other words, the conduct proscribed is the act of intentionally preventing or obstructing an authorized person from effecting his duties. See Finster, 152 S.W.3d at 219. The particular duty the defendant impedes

officer *or* another": (two possibilities). *See* TEX. PEN.CODE ANN. § 38.03(a) (Vernon 2005)

"is simply another means by which a person could be interfering with a police officer in effecting his duties." *Id.* We therefore agree with the Fifth Court of Appeals in finding that section 38.03 of the Texas Penal Code addresses a variety of ways in which to commit a single offense. *See id.*

Because the text of section 38.03 does not prohibit differing types of conduct, we do not read the statute as describing different offenses. Accordingly, we conclude the information did not allege that appellant committed more than one offense, therefore the State was not required to make an election.

## 2. Appellant had notice of the type of violation alleged

■ Because the information charged appellant with the commission of a single offense, our next inquiry focuses on whether the State informed appellant of the type of violation it attempted to prove. The rule requiring the State to elect serves four purposes: (1) ensuring unanimous verdicts; (2) giving the defendant notice of the particular offense with which he is charged; (3) protecting the accused from the introduction of extraneous offenses; and (4) minimizing the risk that the jury may convict because the combined weight of several offenses convinced the jury the defendant was guilty. *See Francis v. State,* 36 S.W.3d 121, 123–25 (Tex.Crim. App.2000) (en banc); *O'Neal v. State,* 746 S.W.2d 769, 772–73 (Tex.Crim.App.1988) (en banc); *Fisher v. State,* 33 Tex. 792, 794 (1870). We now examine whether these purposes were frustrated by the trial court's ruling.

The need to ensure a unanimous verdict is not at issue. At the hearing on the motion to require election, the appellant

(emphasis added).

and the State agreed to submit separate verdicts regarding each way he allegedly violated the statute. *See Renfro v. State,* 827 S.W.2d 532 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (allowing each method of committing same offense alleged in indictment to be submitted alternatively in charge to jury). The jury unanimously found him guilty of resisting arrest, and in a separate finding, unanimously found him guilty of resisting transportation. In other words, the jury unanimously agreed on the facts supporting the conviction. Based on these findings, the trial court entered judgment on a single count of "resisting arrest or transportation."

The third and fourth purposes underlying a motion to elect are also not applicable here. We are not concerned with the possible effect of extraneous or multiple offenses in this case because the appellant was charged with only one offense. We are concerned instead with the whether the information provided appellant with sufficient notice of the charged offense.

▆▆▆▆ Appellant focuses his argument on the second of the four goals. He argues that the information impermissibly alleged all of the ways in which the statute can be violated.[6] Although it appears to be appellant's position that the State can charge him with only one way of violating section 38.03, Texas courts have identified the circumstances under which the State *can* charge a defendant with committing a single offense in more than one way. If a statute sets out several ways for committing an offense, and those ways embrace the same definition, are punishable in same manner, and are not repugnant to each other, the State need not elect between various theories alleged; rather, the jury may consider all of the theories and return a general verdict of guilty. *See, e.g., Ren-*

*fro,* 827 S.W.2d at 536; *Sperling v. State,* 924 S.W.2d 722, (Tex.App.-Amarillo 1996 pet. ref'd); *State v. Garrett,* 798 S.W.2d 311 (Tex.App.-Houston [1st Dist.] 1990, aff'd, 824 S.W.2d 181 (Tex.Crim.App.1992) (en banc)) (holding an indictment for delivery of controlled substance that alleged the delivery was by actual transfer, by constructive transfer, or by offer to sell, provided sufficient notice to defendant that he should prepare to defend prosecution on all three theories of delivery); *see also, Carpenter v. State,* 952 S.W.2d 1 (Tex. App.-San Antonio 1997, aff'd, 979 S.W.2d 633) (finding an indictment paragraph stating defendant "did then and there, with the intent to defraud and harm Ernest Mireles, intentionally remove, conceal, and impair the availability of a government record, to-wit" properly alleged alternative ways of committing offense of tampering with government documents and did not allege three different offenses in same count of indictment); *Kingsley v. State,* 744 S.W.2d 191, 194 (Tex.App.-Dallas 1987), *pet. dism'd,* 784 S.W.2d 688 (Tex. Crim.App.1990) (en banc) (holding indictment against defendant alleging "purchase of child" did not violate article pertaining to joinder of certain offenses, despite claim that it alleged multiple means for commission of the offense or alleged more than one offense in a single paragraph; allegations that defendant gave money to pregnant woman for purposes of acquiring child to place for adoption complied with article 21.24 of the Texas Code of Criminal Procedure); *Carlock v. State,* 8 S.W.3d 717, 721 (Tex.App.-Waco 1999, pet. ref'd) (stating, "It has long been held that where there are several ways or means by which an offense may be committed set forth in the same statute, and those ways or means are subject to the same punishment, they

---

6. *But see* n. 5, *supra.*

may be charged conjunctively in one paragraph").[7] The State may specifically allege, in the conjunctive or disjunctive, any or all of the statutorily-defined types of conduct regarding an offense. *State v. Carter*, 810 S.W.2d 197, 199 (Tex.Crim. App.1991) (en banc) (citing *Ferguson*, 622 S.W.2d at 851). Such a charging instrument still places a defendant on clear notice of what the State will attempt to prove at trial. *Id.* (citing *State v. Winskey*, 790 S.W.2d 641 (Tex.Crim.App.1990) (en banc)).

■■■ A defendant is constitutionally entitled to know what behavior he allegedly engaged in so that he can properly prepare a defense to that allegation. *Id.* (citing *Ferguson*, 622 S.W.2d at 850–51). Under the constitutional guarantee of adequate notice, a defendant may not "be left to guess or assume that the State [is] going to prove one or all the types of [statutorily-defined] conduct." *Id.* (citing *Ferguson*, 622 S.W.2d at 851).

The information in this case met the standard set forth in *Ferguson* and *Carter* for providing notice. It identified several ways (resisting arrest, search, or transportation) a single offense (intentionally preventing or obstructing a peace officer in the completion of his duties by using force) could be committed. Each of these ways of committing the offense was set forth in the same statute, and was subject to the same punishment. Because appellant was not entitled to greater notice than that which was given to him in the information, the trial court properly denied his motion to elect.

Accordingly, we overrule appellant's third issue.

## B. Did the trial court err in admitting the videotaped evidence of verbal resistance?

In his motion in limine, appellant argued that the State should not be allowed to show or refer to those portions of the videotape showing appellant's verbal—but not physical—resistance to Palmer's questioning. Appellant objected to the evidence as irrelevant and prejudicial on the grounds that oral statements do not constitute a "use of force" in violation of section 38.03. The State argued that the evidence was relevant to show appellant's intent to use physical force against Palmer. The trial court denied the motion, finding appellant's verbal actions to be part of the resistance. We agree.

### 1. Standard of Review

The Texas Rules of Evidence favor admissibility of relevant evidence and the presumption is that relevant evidence will be more probative than prejudicial. *Smith v. State*, 105 S.W.3d 203, 207 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (en banc)); TEX.R. EVID. 403. The burden is on the opponent of the proffered evidence to demonstrate the negative attributes of the evidence and to show how these negative attributes substantially outweigh the probative value of the evidence. *Id.* Further, an appellate court reviewing the trial

---

7. Though the information in this case alleged alternate means of committing the same offense in a single paragraph, appellant did not object to the information on that basis. For a complaint to be preserved on appeal, there must be a timely objection stating the specific grounds for the ruling sought. TEX.R.APP. P. 33.1; TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2002). That is to say, the specific complaints urged on appeal must have been made obvious to the trial court at the time trial objections were made. *See Jones v. State*, 843 S.W.2d 92, 98 (Tex.App.-Dallas 1992, pet. ref'd). Because appellant failed to object to the information on the basis that a single paragraph contained more than one means of committing the same offense, we do not address that issue.

court's decision to admit certain evidence may reverse it only for an abuse of discretion, i.e., only when it is outside the zone of reasonable disagreement. *Id.* (citing *Guzman v. State,* 955 S.W.2d 85, 94 (Tex.Crim. App.1997) (en banc); *Apolinar v. State,* 155 S.W.3d 184, 186 (Tex.Crim.App.2005)). An abuse of discretion occurs only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex. Crim.App.2003).

### 2. Analysis

▆▆▆ The videotape in this case shows the entire traffic stop from beginning to end. While the videotape depicts appellant's harsh language toward Palmer, it also shows the escalating degree of force appellant used in pulling against Palmer as Palmer led him to the patrol car. Palmer testified that appellant was belligerent and continually cursed, yelled, and screamed at Palmer. He further stated appellant repeatedly pulled against him, and was able to break his grasp. Although appellant reurged his objections to admitting the videotape, he did not object to Palmer's testimony. Although appellant now contends that the prosecutor compounded error by "argu[ing] over and over" during closing arguments that Palmer received a great deal of verbal abuse from the appellant, appellant did not object to those comments.[8]

Section 38.03 only prohibits conduct that is intentional. In addition to showing the escalating degree of force appellant used, the audio portion of the tape was relevant in deciding whether appellant intentionally used force against Palmer.

For example, the tape revealed that immediately after Officer Palmer told appellant he would be taken to jail, appellant twice told the officer "you're going to regret this," and repeatedly said "get your hands off of me." Although Palmer testified that he outweighed appellant by almost a hundred pounds, the videotape showed appellant pulling Palmer up an incline. Appellant was not merely pulling away from the officer, but pulling the officer.

Viewing the entire videotape and Palmer's testimony, we cannot say the probative value of the videotape is substantially outweighed by its prejudicial effect. *See* Tex.R. Evid. 403. Palmer testified without objection to a similar course of events and some of the dialogue contained in the videotape. The videotape was helpful to the jury because it placed Palmer's testimony about appellant's increasing use of force against him in the proper context and provided an objective measure of that force. It also provided objective evidence that appellant's use of force was intentional. We conclude the trial court's decision to admit the videotape was well within the zone of reasonable disagreement, and therefore overrule appellant's fourth issue. *See Apolinar,* 155 S.W.3d at 186.

### C. Is the Evidence Legally and Factually Sufficient to Support the Conviction?

In his first two issues, appellant contends the evidence is legally and factually insufficient to support the jury's finding that he resisted arrest and resisted transportation. In support of his argument, he argues that there is no evidence to show he performed any act that could be construed as resisting arrest.[9] He also

---

8. Appellant's own counsel asked Palmer to identify "which cuss word" on the videotape coincided with the end of appellant's use of force.

9. Appellant's argument on this issue is likely predicated on his claim that the portion of the videotape to which he objected in his motion in limine was inadmissible. Having over-

argues that his actions could not be interpreted as resisting transportation. Although appellant separated these two issues in his brief, we consider them under the same standard of review.

## 1. Standard of Review

When an appellant challenges both the legal and factual sufficiency of the evidence, we address the legal sufficiency challenge first because an affirmative finding on that issue will result in a rendition of a judgment of acquittal, while a finding of factual insufficiency warrants a remand for a new trial. *Nickerson v. State*, 69 S.W.3d 661, 668 (Tex.App.-Waco 2002, pet. ref'd).

When conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim.App.2004). During this process, we do not re-evaluate the credibility of witnesses or the weight of evidence, and we will not substitute our judgment for that of the fact-finder. *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998). We affirm the judgment if any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997) (en banc).

In reviewing the evidence for factual sufficiency, we view it neutrally, setting aside the verdict only if (1) the evidence supporting the verdict, if taken alone, is too weak to sustain the finding of guilt beyond a reasonable doubt, or (2) the contrary evidence is so strong that the State could not have met its burden of proof beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim. App.2004). In our evaluation of the evidence, we must be deferential to the jury's findings and resist intruding on its role as the sole judge of the witnesses' credibility and of the weight to be given to the evidence. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (en banc).

## 2. Analysis

■ Although appellant separates his sufficiency issues into resisting arrest and resisting transportation, the judgment reflects that appellant was convicted of a single offense. To obtain a conviction, the State was required to prove appellant intentionally prevented or obstructed Palmer, a person appellant knew to be a police officer, from effecting the arrest or transportation of appellant by using force against Palmer. *See* Tex. Pen.Code Ann. § 38.03(a) (Vernon 2002).

■ An arrest is a process with a beginning and an end, the end being a successful restriction of liberty of movement by either force or submission. *See Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim.App.2000). Appellant argues nothing in the record shows he resisted arrest because the (1) videotape shows him turning around and placing one hand behind his back after Palmer told him he was being arrested, and (2) Palmer stated that at that point, he was "in control of the situation."

Appellant further claims he did not resist transportation because "merely pulling away" from the officer is not sufficient to resist transportation, nor did appellant "shove the officer or hit the officer or

ruled appellant's issue contesting the trial court's ruling in the section above, we will consider the contents of all admitted portions of the video as part of our legal and factual sufficiency analysis.

touch the officer in any way." But, the videotape shows that as Palmer led appellant to the patrol car, appellant attempted to twist away from Palmer's grasp, and pulled Palmer up an incline, away from the patrol car. The record also reflects that out of the camera's view, appellant was able to break Palmer's grasp and "pull [Palmer] off [his] feet." Further, as Palmer attempted to place appellant in the patrol car, appellant repeatedly pulled Palmer away from the door's lock, causing Palmer to have to "struggle" to unlock the door. Palmer also testified that after appellant was placed in the patrol car, he was told not to kick the window, but continued to do so. The videotape demonstrates the shaking of the patrol car as appellant kicked the window with enough force to dislodge it. Palmer testified without objection that another officer was standing "right there next to the car," [10] and that the appellant's actions at this time might have been directed at the other officer.

Viewing the evidence in the light most favorable to the verdict, we conclude a reasonable juror could have found beyond a reasonable doubt that appellant resisted arrest or transportation. *See Moff*, 131 S.W.3d at 488. The evidence showed appellant intentionally obstructed Palmer, a person appellant knew to be a peace officer, from effectuating appellant's arrest or transportation by using force against Palmer. Further, when the evidence is cast in a neutral light, we are not convinced the evidence supporting conviction, taken alone, is too weak to sustain the jury's finding of guilt beyond a reasonable doubt, nor is the contrary evidence so strong that the State could not have met its burden of proof beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484–85.

Accordingly, we overrule appellant's first and second issues concerning sufficiency of the evidence.

## IV. CONCLUSION

In sum, we conclude Section 38.03 encompasses various ways of committing the single offense of resisting arrest, search, or transportation. Appellant was charged by information with violating section 38.03 in three different ways, and received sufficient notice of the need to defend against evidence of resisting arrest and resisting transportation.[11] Appellant specifically agreed to separate jury questions on resisting arresting and resisting transportation, and the evidence was legally and factually sufficient to support the jury's unanimous finding on both of these issues. The trial court did not err in admitting the challenged portions of the videotape of appellant's traffic stop; the tape provided evidence that appellant used force against a police officer effecting an arrest or transportation, and that appellant did so intentionally.

Having overruled each of appellant's objections and sustained each challenged ruling, we affirm the judgment of the trial court.

---

10. The other officer's voice is heard on the videotape during this time, although he is out of range of the camera.

11. Appellant was aware prior to trial that the State abandoned its claim of resisting search.