

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00101-CR

KYLER PATRICK KOCH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court
Hemphill County, Texas
Trial Court No. 5656, Honorable Lisa Johnson, Presiding

January 6, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant Kyler Patrick Koch appeals his conviction for the offense of resisting arrest, search, or transportation.[1]  By his sole issue, Appellant argues that the evidence is insufficient to support his conviction.  We affirm the judgment of the trial court.

---

[1] TEX. PENAL CODE ANN. § 38.03(a).

BACKGROUND

Appellant was charged by information with "prevent[ing] or obstruct[ing] Michael Foreman, a person [Appellant] knew to be a peace officer, from effecting the transportation of [Appellant], by using force against the peace officer." The following evidence was presented at Appellant's jury trial.

On April 30, 2023, law enforcement officers were dispatched to a residence in Canadian in reference to a domestic violence dispute between Appellant and his mother. Appellant's mother reported that he had mental health issues and was suicidal. After arguing with her and breaking a glass door in the residence, Appellant left in his car only to return a short time later. Earlier that day, one of the responding officers, Hemphill County Sheriff's Deputy Michael Foreman, was present during a separate incident when Appellant overdosed on prescription medication and was combative with emergency personnel. During that incident, Foreman assisted with restraining Appellant and getting him into an ambulance so that he could be taken to the hospital for treatment.

When law enforcement officers arrived at the residence in response to the domestic violence dispatch, Appellant was sitting in his car in the driveway. Foreman asked him to step out of the vehicle for Appellant's safety and that of the officers. After he exited his vehicle, Foreman placed Appellant in handcuffs. Appellant repeatedly asked Foreman if he had a warrant and Foreman assured him he was not under arrest, telling him, "We're just here to talk to you." Appellant asked, "Why are you detaining me?" Foreman replied, "Because your mother said you were making suicidal thoughts—or saying suicidal things." During their efforts to detain him, Appellant resisted to such an

2

extent that Foreman's body-worn camera was dislodged. Another officer assisted Foreman in placing Appellant in the back seat of the patrol vehicle.

After speaking to Appellant, Appellant's mother, and the other officers, Foreman decided to take Appellant to the local hospital and seek an emergency detention order.[2] When Foreman informed Appellant of his decision, Appellant objected. As Foreman was buckling Appellant's seatbelt, Appellant got up on his knees and lunged at Foreman with his shoulder. Appellant hit Foreman with sufficient force to knock his body-worn camera off his chest. With the other officers assisting, they were able to push Appellant back into the vehicle. Appellant continued kicking his legs in an attempt to keep the door open, trying to get out of the vehicle. The entire encounter with Appellant was recorded on the officers' body-worn cameras and played for the jury.

Appellant was transported to the Hemphill County Hospital and an emergency detention order was obtained directing Appellant's transport to the Pavilion in Amarillo.[3] After Foreman obtained the emergency detention order, several hours elapsed while waiting for Appellant to be medically cleared and accepted by a mental health facility. However, there were no beds available at the Pavilion or any alternate mental health facility. After hospital staff informed Foreman that Appellant would be released, Foreman arrested him for resisting arrest, search, or transportation.

---

[2] Foreman testified that it was the standard procedure of the Hemphill County Sheriff's Office to transport a person to the local hospital and then obtain an emergency detention order. Once the emergency order is granted, the officer waits until the person is medically cleared before transporting the person to the mental health facility named in the emergency order.

[3] The Pavilion is a psychiatric hospital in Amarillo and the "nearest appropriate inpatient mental health facility." *See* TEX. HEALTH & SAFETY CODE ANN. § 573.001(d)(1)(A).

3

A jury found Appellant guilty and the trial court assessed punishment at 180 days in jail. This appeal followed.

<h2 style="text-align:center">SUFFICIENCY OF THE EVIDENCE</h2>

The standard we apply in determining whether the evidence is sufficient to support a conviction is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We are also required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When the record supports conflicting inferences, we presume that the jury resolved any conflicts in favor of the verdict and will defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

A person commits the offense of resisting transportation if he intentionally prevents or obstructs a person he knows is a peace officer from effecting transportation of the actor by using force against the peace officer. TEX. PENAL CODE ANN. § 38.03(a); *Hartis v. State*, 183 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2005, no pet.) For the purposes of section 38.03, "using force against" a peace officer means "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer . . . ." *Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016). It is no defense to prosecution that the arrest or search was unlawful. TEX. PENAL CODE ANN. § 38.03(b); *White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. [Panel Op.] 1980). The section creates just one offense that can be committed in three different ways; it does not create three separate offenses. *See Hartis,* 183 S.W.3d at 799.

Resisting arrest, search, or transportation is in the "obstructing governmental operation" chapter under the "Offenses Against Public Administration" title of the Texas Penal Code. *See* TEX. PENAL CODE ANN. ch. 38. The gravamen of the offense of resisting transportation is the use of force to prevent the transportation of oneself. "The force must occur while the officer is attempting to effectuate an arrest, complete a search, or transport the actor." *Willis v. State*, No. 11-20-00083-CR, 2022 Tex. App. LEXIS 1938, at *9 (Tex. App.—Eastland Mar. 24, 2022, no pet.) (mem. op., not designated for publication). To establish that an officer was in the process of effecting a transportation, the State must prove that the officer had a preexisting intent to transport the person and took some action pursuant to that intent. *Malone v. State*, No. 14-22-00851-CR, 2024 Tex. App. LEXIS 2797, at *7–8 (Tex. App—Houston [14th Dist.] Apr. 23, 2024, no pet.)

(mem. op., not designated for publication). The statute is intended to discourage the use of force against a peace officer. *Medford v. State*, 990 S.W.2d 799, 810 (Tex. App.—Austin 1999), vacated by 13 S.W.3d 769 (Tex. Crim. App. 2000).

**ANALYSIS**

RESISTING ARREST, SEARCH, OR TRANSPORTATION

By his sole issue, Appellant contends that the evidence is insufficient to support his conviction for resisting transportation because a transport must be lawful before resisting that transport can be sufficient to convict. *See* TEX. PENAL CODE ANN. § 38.03.[4] He contends that his transport was unlawful because he was not under arrest, and Deputy Foreman did not strictly follow procedures established by Chapter 573 of the Texas Health and Safety Code. Specifically, Appellant complains that after Foreman took him into custody, he took him to a hospital rather than taking him immediately to the "nearest appropriate inpatient mental health facility." TEX. HEALTH & SAFETY CODE ANN. § 573.001(d)(1)(A). The emergency order directed Foreman to take Appellant to the Pavilion, which never happened.

Peace officers are specifically tasked with investigating emergency situations in which a person with mental illness is threatening to harm himself. In section 573.001 of the Texas Health and Safety Code, the Legislature has defined and codified the standard of probable cause for the situation encountered by the officers when Appellant was taken into custody. *See id.; Trevino v. State*, 512 S.W.3d 587, 595 (Tex. App.—El Paso 2017,

---

[4] Appellant does not challenge the evidence of his intent, his efforts to prevent or obstruct Deputy Foreman, or his use of force against Foreman.

no pet.). Under the probable cause standard, "[a] peace officer, without a warrant, may take a person into custody . . . if the officer: (1) has reason to believe and does believe that: (A) the person is a person with mental illness; and (B) because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody." TEX. HEALTH & SAFETY CODE ANN. § 573.001(a). This "reason to believe" standard equates to probable cause. *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012); *Trevino*, 512 S.W.3d at 595. Further, the Health and Safety Code defines mental illness as a "condition" that (1) substantially impairs a person's thought, perception of reality, emotional process, or judgment; or (2) grossly impairs behavior as demonstrated by recent disturbed behavior. *Id.* § 571.003(14). Persons considered to be suicidal meet this definition. *Trevino*, 512 S.W.3d at 595. The statute further provides that in determining whether there is a substantial risk of serious harm to the person or others, a peace officer may consider a variety of factors, including the person's behavior, evidence of the person's "severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty." TEX. HEALTH & SAFETY CODE ANN. § 573.001(b).

In this case, when the officers arrived at the residence, it was clear that Appellant had mental health issues, a fact that Appellant admitted during questioning. Deputy Foreman had probable cause to detain Appellant based upon the suicidal statements and the officer's knowledge of Appellant's mental health issues. *See Cantrell*, 666 F.3d at 923 (probable cause exists where facts and circumstances within officer's knowledge at time of seizure are sufficient for reasonable person to conclude that individual is mentally

7

ill and poses substantial risk of serious harm); *Trevino*, 512 S.W.3d at 595. After Foreman completed his investigation and determined there was probable cause to transport Appellant to a mental health facility as required by the Health and Safety Code, Appellant began engaging in his obstructive conduct. The evidence is undisputed that while Foreman attempted to secure Appellant in the patrol vehicle, Appellant lunged at Foreman and hit him with sufficient force to knock his body-worn camera off his chest. Appellant continued to kick his legs in an attempt to keep the vehicle's door from closing as he tried to get out of the vehicle. The elements of the offense were met after Appellant used force against the officer. As such, Foreman's later actions do not invalidate that he was attempting to transport Appellant at the time Appellant resisted. The fact that Foreman took Appellant to the hospital to have him medically cleared before obtaining the emergency detention order does not render Appellant's transport illegal as the offense of resisting transportation had already occurred.[5] Based on the testimony presented, a rational factfinder could conclude that Appellant's conduct obstructed Foreman from performing his duties related to Appellant's transport. *See Mata v. State,* Nos. 02-23-00110-CR, 02-23-00111-CR, 2023 Tex. App. LEXIS 9379, at *13 (Tex. App.—Fort Worth Dec. 14, 2023, pet. ref'd) (mem. op., not designated for publication); *Yadav v. State*, Nos. 04-19-00483-CR, 04-19-00486-CR, 2020 Tex. App. LEXIS 6348, at *6–7 (Tex. App.—San Antonio, Aug. 12, 2020, pet. ref'd) (mem. op., not designated for publication). We overrule Appellant's issue.

---

[5] Because Appellant had already resisted transport before Foreman took any action that might have rendered the transport unlawful, we express no opinion on Appellant's argument that an unlawful transport is a defense to a charge of resisting transport.

**CONCLUSION**

Having overruled Appellant's sole issue on appeal, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.